**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

**CLAUDIA PATRICIA ATEHORTUA-**
**CASTRO,**
          **Petitioner/Movant,**

**v.**                                                      **3:11-CV-2780-M-BK**
                                                            **(3:07-CR-387-M-03)**

**UNITED STATES OF AMERICA,**
          **Respondent.**


**CARLOS HUMBERTO BEJARANO,**
**38345-177,**
          **Petitioner/Movant,**

**v.**                                                      **3:11-CV-2784-M-BK**
                                                            **(3:07-CR-387-M-4)**

**UNITED STATES OF AMERICA,**


**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and Special Order 3, this case was

automatically referred to the United States Magistrate Judge for findings, conclusions, and

recommendation.  Petitioners Claudia Patricia Atehortua-Castro ("Castro") and Carlos Humberto

Bejarano ("Bejarano") filed motions under 28 U.S.C. § 2255 to vacate, set aside, or correct

sentence.  For the reasons that follow, it is recommended that the section 2255 motions be

denied.

## I.  BACKGROUND

Petitioners pleaded guilty to conspiring to commit money laundering and each was

sentenced below the calculated guideline range to 42 months' imprisonment and a 2-year term of

supervised release.  *See United States v. Atehortua-Castro & Bejarano*, 3:07-CR-387-M(Def. 3 and 4) (N.D. Tex., Dallas Div., Oct. 28, 2010).  The District Court permitted Castro to delay the commencement of her prison term and to return to China until Bejarno has completed service of his prison term.  No direct appeal was taken.  Instead, Petitioners timely filed these *pro se* section 2255 motions.  Because the section 2255 motions present the same claims, are based on the same underlying facts, and were consolidated for hearing, the undersigned submits this consolidated report and recommendation.

In two grounds, Petitioners allege counsel provided ineffective assistance in failing to file a requested notice of appeal, in failing to secure an immunity agreement, and in failing to investigate their actual innocence.  After briefing was complete, the Court scheduled an evidentiary hearing on the first claim and permitted Petitioners' to supplement their section 2255 motions to include the related claim that defense counsel failed to adequately consult with Petitioners about their appeal rights and, specifically, that defense counsel failed to advise Petitioners that they could appeal the voluntariness of their appeal waivers and guilty pleas.

## II.  DISCUSSION

Following conviction and exhaustion or waiver of the right to direct appeal, the Court presumes that a petitioner stands fairly and finally convicted.  *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998).  Under 28 U.S.C. § 2255, a petitioner ordinarily can collaterally challenge his conviction only on constitutional or jurisdictional grounds.  *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (*en banc*).

When a convicted defendant seeks habeas corpus relief on the ground of ineffective assistance of counsel, he must demonstrate (1) that counsel's representation fell below an

objective standard of reasonableness, and (2) that there is a reasonable probability that but for

counsel's unprofessional errors, the result of the proceeding would have been different.

*Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  The Court need not address both

components if the petitioner makes an insufficient showing on one.  *Id.* at 697.  In reviewing

counsel's performance, the Court must be "highly deferential," making every effort "to eliminate

the distorting effects of hindsight," and "indulge a strong presumption that counsel's conduct

falls within the wide range of reasonable professional assistance."  *Id.* at 689.

### A.  Counsel's Failure to File a Notice of Appeal (First Ground)

The Court initially scheduled an evidentiary hearing to address Petitioners' first claim that

defense counsel provided ineffective assistance by failing to file a requested notice of appeal as

alleged in the sworn section 2255 motions.  *See Roe v. Flores-Ortega,* 528 U.S. 470, 477 (2000)

("a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts

in a manner that is professionally unreasonable.").  At the evidentiary hearing, however, Bejarano

testified that he and Castro only expressed only an interest in appealing, and offered no evidence

that either had ever requested that a notice of appeal be filed.  Because Petitioners have

abandoned their claim that they requested counsel to appeal, it should be denied.

When a defendant does not specifically instruct counsel to appeal, as in this case, the

Court must inquire if counsel performed deficiently in failing to appeal by first determining

"whether counsel in fact consulted with the defendant about an appeal."  *Flores-Ortega,* 528 U.S.

at 478.  The "term 'consult' . . . convey[s] a specific meaning – advising the defendant about the

advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the

defendant's wishes."  *Id.*  Under *Flores-Ortega*, "[i]f counsel has consulted with the defendant,

the question of deficient performance is easily answered: [c]ounsel performs in a professionally

unreasonable manner *only* by failing to follow the defendant's express instructions with respect

to an appeal." *Id*.  However, "[i]f counsel has not consulted with the defendant, the court must in

turn ask a second, and subsidiary, question: whether counsel's failure to consult with the

defendant itself constitutes deficient performance." *Id*.

Although the United States Supreme Court recognized "that the better practice is for

counsel routinely to consult with the defendant regarding the possibility of an appeal," it rejected

a bright-line rule that "in every case counsel's failure to consult with the defendant about an

appeal is necessarily unreasonable, and therefore deficient." *Id.* at 479.  Ultimately, the Supreme

Court concluded:

> counsel has a constitutionally imposed duty to consult with the defendant about an
> appeal when there is reason to think either (1) that a rational defendant would
> want to appeal (for example, because there are nonfrivolous grounds for appeal),
> or (2) that this particular defendant reasonably demonstrated to counsel that he
> was interested in appealing.

*Id.* at 480.  Of course, when "making this determination, courts must take into account all the

information counsel knew or should have known," including the "highly relevant factor" of

whether the defendant pled guilty.  *Id.*

> Even in cases when the defendant pleads guilty, the court must consider such
> factors as whether the defendant received the sentence bargained for as part of the
> plea and whether the plea expressly reserved or waived some or all appeal rights.
> Only by considering all relevant factors in a given case can a court properly
> determine whether a rational defendant would have desired an appeal or that the
> particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Id.*

To establish *Strickland* prejudice in a case where the defendant has not specifically

requested his attorney to file an appeal, the petitioner must demonstrate "that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484.  The petitioner need not show that an appeal would be successful or even state the grounds on which he would have appealed. *Id.* at 486. This standard applies even in cases where a defendant has waived the right to appeal or collateral review. *See United States v. Tapp,* 491 F.3d 263, 266 (5th Cir. 2007).

<u>Evidentiary Hearing Testimony</u>

At the evidentiary hearing held on April 26, 2012, the Court heard testimony from Bejarano, his former defense counsel, Michael Gibson, and Castro's former defense counsel, Roberto Cardenas.  Bejarano testified that following sentencing, while exiting the courtroom, he asked Mr. Cardenas in Spanish, "Do we appeal?"  Defense counsel, however, advised him that they should not appeal, but did not give him any reason for not appealing.  Although Bejarano testified that he faulted his attorney for not explaining his right to appeal, he conceded that he did not request counsel to further explain his appeal rights or file a notice of appeal.  In the subsequent three weeks before reporting to prison, Bejarano only communicated with Mr. Gibson about BOP designation paperwork and, at no time, inquired about appealing.  He testified that he did not learn of his right to appeal until July 2011, when, for the first time, he read the sentencing transcript.  In response to the undersigned's question about what he wanted to appeal, Bejarano stated that he and Castro believed that their 42-month sentence "was a lot of time" compared to what defense counsel had told them, and that, if they could revise the sentencing court's calculation of the amount of money laundered, they hoped to receive a lower sentence.

Mr. Cardenas, who represented Castro, testified that pleading guilty to Count 2 of the

indictment and cooperating with the Government by rendering substantial assistance was part of the defense strategy to obtain a motion for downward departure under USSG § 5K1.1, which the Government, in fact, filed and the Court considered at sentencing.  Although Bejarano and Castro were unhappy with their 42-month sentences, Mr. Cardenas testified that the Court's ruling that allowed staggered reporting times was unprecedented.  Castro, however, became very emotional immediately following sentencing due to the length of the sentence, so Mr. Cardenas quickly escorted the Petitioners out of the courtroom and to Mr. Gibson's office.  While in the conference room, Ms. Castro continued to cry and Bejarano asked Mr. Cardenas, "What about an appeal?"  Since Mr. Gibson represented Bejarano, Mr. Cardenas turned the question to Mr. Gibson who advised Bejarano that he could appeal, but that there was nothing to appeal.  Mr. Cardenas agreed with Mr. Gibson's advice and believed that the Petitioners both understood, although they continued to be very emotional about the length of their sentences.  Mr. Cardenas further testified that, in his opinion there was no basis to appeal, so it was reasonable to advise the Petitioners not to appeal.

Mr. Cardenas conceded that, during the post-sentencing conference, he did not discuss with Petitioners the exceptions to the appeal waiver or the voluntariness of either the waiver or the guilty plea.   However, he recalled addressing those matters before re-arraignment.  Ultimately, the post-sentencing meeting ended cordially with the Petitioners neither requesting Mr. Cardenas to appeal nor inquiring further about an appeal.  In the weeks following sentencing, even though Mr. Cardenas communicated by phone with both Petitioners (once or twice with Castro, and once very briefly with Bejarano), neither inquired about an appeal or requested him to appeal.

Mr. Gibson, who represented Bejarano, reiterated Mr. Cardenas' testimony.  He testified that Petitioners received substantial benefit from cooperating with the Government – a offense-level reduction for acceptance of responsibility, dismissal of Count 1 of the indictment, and the Government's filing of a 5K1.1 motion.  Nevertheless, while counsel had hoped for a lower sentence, Mr. Gibson thought it extraordinary that District Judge Lynn had allowed the staggered reporting times and permitted Castro to return to China in the interim.  In response to the post-sentencing question about whether to appeal, posed while in counsel's conference room, Mr. Gibson advised Bejarano that he could appeal, but that there was "nothing to gain on appeal" and, thus, no reason to appeal.  Mr. Gibson testified that Bejarano had no reaction to the above statements and that he proceeded to answer all of Bejarano's questions about Court's calculation of the amount of money laundered used in determining the advisory guideline rage.  While Mr. Gibson did not discuss the appeal waiver exception during the post-sentencing conference, he recalled doing so in detail at the re-arraignment stage of the criminal proceedings.  The post-sentencing conference ended amiably, with neither Petitioner inquiring further about appealing.

Two or three weeks following sentencing, Mr. Gibson again met with both Petitioners in his office to discuss immigration and the logistics of reporting to the Bureau of Prisons.  While Petitioners were still dissatisfied with their sentences, neither inquired or had further questions about appealing.  Mr. Gibson met with Castro one last time, after Bejarano reported to BOP, but again she did not ask about appealing.

<u>Adequacy of Counsel's Post-Sentencing Consultation</u>

Petitioners contend the post-sentencing consultation was inadequate because counsel advised them there was no issue to appeal.  They assert counsel failed to discuss the advantages

and disadvantages of appealing and to inform them that they could appeal issues preserved under the appeal waiver, namely the voluntariness of the appeal waiver and the guilty plea.

Contrary to Petitioners' assertion at the evidentiary hearing, the Court cannot assess counsel's consultation in a vacuum without considering the proceedings that led to Petitioner's decision to plead guilty and cooperate with the Government. *See Flores-Ortega,* 528 U.S. at 480 ("Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings."). Petitioners faced a ten-year minimum sentence. Only by virtue of their guilty pleas, appeal waivers, and extensive cooperation, did they receive a reduction for acceptance of responsibility, dismissal of the remaining count of the indictment, and the 5K1.1 motion for downward departure filed by the Government. Petitioners' own statements under oath at the re-arraignment hearing confirm that they knowingly and voluntarily entered into guilty pleas with appeal waivers. *See United States v. Cothran*, 302 F.3d 279, 284 (5th Cir. 2002) (giving statements during plea "colloquy greater weight than . . . unsupported, after-the-fact, self-serving revisions."). By pleading guilty with an appeal waiver, Petitioners significantly decreased the range of possible issues for appeal. Moreover, they each received a 42-month sentence of imprisonment, which was significantly below the advisory Guidelines range of 108-135 months and, thus, did not trigger any of the appeal waiver exceptions. In addition, in an unprecedented and extremely favorable ruling to the defense, the District Court staggered the start of Petitioners' prison terms, allowing Castro to return to China to take care of her young children while Bejarano first serves his sentence.

Nevertheless, because Petitioners were dissatisfied with the length of their sentence and Bejarano inquired about appealing, Mr. Gibson consulted with Bejarano about the advantages and disadvantages of appealing.  He advised Bejarano that, while he could appeal, there was "nothing to gain" by appealing.  Mr. Gibson explained to Bejarano that he and Castro had waived their appeal rights by pleading guilty and that there was no issue for appeal.  While after sentencing counsel did not discuss specifically the limited exceptions to the appeal waiver contained in each of the plea agreements, those had been fully discussed in conferences preceding re-arraignment.

The Court finds credible counsel's testimony at the evidentiary hearing, and concludes that Mr. Gibson provided Bejarano sufficient information from which he could have intelligently and knowingly asserted his right to an appeal if he had wanted to.  The Court finds that Bejarano, however, trusted counsel's advice that there was "nothing to gain" on appeal, and that he did not express any further interest in appealing.  Indeed, in the weeks following sentencing, neither Bejarano nor Castro indicated any desire to appeal.  The Court further credits Mr. Gibson testimony that during the last in-person meeting, two to three weeks after sentencing, Petitioners did not inquire further about appealing.  Based on this evidence, the Court concludes that neither Petitioner reasonably demonstrated to counsel an interest in appealing.  The Court finds that Bejarano's testimony at the evidentiary hearing to the contrary was not plausible and, thus, concludes that counsel adequately consulted with Petitioners about appealing.  *See United States v. Doyle,* 631 F.3d 815, 817-818 (6th Cir. 2011) (counsel did not render ineffective assistance because petitioner knew of his right to appeal, defense counsel discussed with him at length the merits of an appeal, and petitioner did not instruct counsel to file a notice of appeal);

*Kapelioujnyi v. United States*, 422 Fed. Appx. 25, 26 (2nd Cir. 2011) (unpublished, summary

order) (counsel sufficiently consulted with petitioner regarding appeal when he explained that

petitioner had waived his appeal rights and that the sentence was within the plea agreement's

stipulated Guidelines range, and petitioner did not expressed any further interest in appealing

after hearing counsel's advice); *United States v. Purviance*, 400 Fed. Appx. 201, 202 (9th Cir.

2010) (unpublished memorandum) (rejecting claim that counsel failed properly to consult with

petitioner regarding appeal because petitioner and defense counsel discussed the possibility of an

appeal and the petitioner did not instruct counsel to appeal).

   Petitioners rely on *Thompson v. United States*, 504 F.3d 1203, 1207-08 (11th Cir. 2007),

to argue that counsel's consultation was inadequate because counsel merely advised there was no

issue for appeal.  In *Thompson,* however, the defendant had not signed an appeal waiver, and the

sentencing court had denied him a minor role reduction and imposed a sentence higher than that

of his co-defendants.  *Id.* at 1207-8.  Moreover, in Thompson, during the brief consultation,

which lasted no more than five minutes, counsel made no real effort to discover the defendant's

wish to appeal or his dissatisfaction with his sentence.  *Id.* at 1207-08 (holding that "[s]imply

plausible the view that an appeal would not be successful does not constitute 'consultation' in

any meaningful sense.").   On the other hand, in this case, Petitioners had the opportunity to meet

with counsel in a post-sentencing conference and discuss in detail their dissatisfaction with the

sentence and weigh the benefits of an appeal in the context of their guilty plea and appeal waiver.

*Cf. Devine v. United States*, 520 F.3d 1286, 1288-89 (11th Cir. 2008) (defense counsel did not

have affirmative duty to consult with defendant about pursuing appeal from sentence that he

received, at bottom of Sentencing Guidelines range, after pleading guilty and waiving right to

appeal, where defendant had no nonfrivolous grounds for appeal and did not reasonably

demonstrate to counsel that he was interested in appealing, not having said anything to suggest

his interest in appealing after defense counsel advised him that only possible ground for appeal

was if he had received illegal sentence, and counsel believed that defendant's sentence was

legal).

Petitioners also rely on *Palacios v. United States*, 453 Fed. Appx. 887 (11th Cir. 2011)

(unpublished *per curiam*), which extended the holding in *Thompson* to a guilty plea with a signed

appeal waiver.  In that case, counsel, while still in the courtroom, only told the defendant "that

nothing could be done because he had waived his right to appeal his sentence and the district

court had sentenced him within the guidelines range."  *Id.* at 888.  Because counsel "did not . . .

attempt to determine whether [the defendant] wished to file an appeal or discuss the advantages

and disadvantages of filing such an appeal," the court of appeals found counsel's consultation

was inadequate.  *Id.* at 889.  In this case, as noted above, Petitioners benefitted from a

meaningful, post-sentencing discussion with counsel about their dissatisfaction with the sentence,

their desire to appeal, and the benefits of appealing.  Notably, in the case *sub judice*, counsel

advised Petitioners that they <u>could</u> appeal and only advised against it, unlike counsel in

*Thompson* who informed his client "that nothing could be done."  *Id.* at 888.

Therefore, because the evidence establishes that counsel adequately consulted with

Petitioners about an appeal, Petitioners trusted counsel's advice that there was "nothing to gain"

on appeal, and Petitioners never instructed counsel to appeal, the Court concludes that Petitioners

cannot overcome the presumption that their attorney's conduct falls within the wide range of

reasonable assistance.  In the absence of deficient performance, Petitioners' claim of ineffective

assistance of counsel necessarily fails.

<u>Prejudice Prong</u>

Even assuming deficient performance, the Court concludes that Petitioners cannot show prejudice.  In light of the totality of the circumstances of this case, and the evidentiary hearing testimony, Petitioners cannot demonstrate a reasonable probability that, but for counsel's presumed failure to adequately consult with them about an appeal, they would have timely appealed.  The testimony at the evidentiary hearing reflected that Petitioners trusted and were satisfied with their counsel's advice that there was "nothing to gain" by appealing.  In the week following sentencing, neither Bejarano nor Castro had any question about or expressed an interest in appealing.  Petitioners' only evidence of prejudice is Bejarano's testimony that, if counsel had properly advised him that he could have appealed the voluntariness of the waiver and plea, he and Castro would have insisted on appealing.  Nothing in the record supports Castro's supposition, however, and, as indicated previously, the Court finds Castro's self-serving testimony implausible in light of the other evidence.

Having failed to demonstrate prejudice, Petitioners' claim of ineffective assistance of counsel fails.

**B.  Counsel's Failure to Secure Immunity (Ground 2)**

Petitioners assert that counsel was constitutionally ineffective in failing to secure an immunity agreement before Petitioners appeared in court.  (Doc. 1, Mem. at 13.)  Petitioners' allegations, however, are conclusory at best.  Apart from citing *Kastigar v. United States*, 406 U.S. 441 (1972), they do not claim that the Government wrongfully used information or testimony that they provided in this or any other criminal case.  *See United States v. Brown*, 298

F.3d 392, 410 (5th Cir. 2002) (transactional immunity prevents prosecution for crimes; use

immunity prevents the use of testimony in prosecution for crimes).  Thus, there is absolutely no

evidence that either counsel's performance was deficient.  Even assuming *arguendo* deficient

performance, Petitioners do not make any showing of prejudice resulting from counsel's failure

to seek immunity.  Therefore, Petitioners' claim of ineffective assistance of counsel fails.

### C.  Counsel's Failure to Investigate Petitioners' Actual Innocence (Ground 2)

Petitioners also claim that counsel was ineffective because they "never investigated the

petitioner's statements of actually [*sic*] innocent [*sic*] of the charges."  (Doc. 1, Mem. at 13.)

This claim is also conclusory.  Petitioners do not show how counsel's representation was

deficient, and that, but for counsel's errors, they would not have pled guilty and would have

insisted on going to trial.  The claim appears to be an attempt to challenge the evidence of their

guilt.  However, Petitioners' guilty plea foreclosed the possibility of contesting the sufficiency of

the evidence.  *See* Plea Agreement at 11.  Where, as here, a defendant voluntarily pleads guilty,

the Constitution does not require that evidence be introduced to support the plea. This is because

a guilty plea is "more than a confession which admits the accused did various acts," and is a

"stipulation that no proof by the prosecution need be advanced." *Boykin v. Alabama,* 395 U.S.

238, 242-43 & n. 4 (1969) (internal quotes omitted).  "A guilty plea forecloses appellate review

of the factual and legal elements necessary to sustain a final judgment of guilty and a lawful

sentence."  *United States v. Useche,* 273 F.3d 622, 625 (5th Cir. 2001) (citations omitted).

Moreover, as the Government correctly notes, Petitioner's contention that the evidence

was insufficient is refuted by Petitioners' own statements during the guilty plea hearing.  *See*

*United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) ("[A] defendant will not be

heard to refuse [his] testimony given at a plea hearing while under oath.").  The Factual Resume and Petitioners' own admission during re-arraignment, that they committed each elements of the offense, establish that Petitioners laundered money knowing they were proceeds from unlawful activity and with the intent "to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity[.]"  *See* Factual Resume at 4; Rearrignment Tr. at 15.  Unlike *Cuellar v. United States*, 553 U.S. 550, 563-67 (2008), on which Petitioners rely, their Factual Resume and court admissions establish more than mere concealment of funds. Therefore, Petitioners' ineffective assistance of counsel claim lacks merit.

### III.  RECOMMENDATION

For the foregoing reasons, it is recommended that Petitioners' motions to vacate, set aside or correct sentence under 28 U.S.C. § 2255 be **DENIED**.

SIGNED June 1, 2012.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE